UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOE RENE GARCIA, | } |
| | } |
| Plaintiff, | } |
| VS. | } CIVIL ACTION NO. H-07-851 |
| | } |
| BEST BUY STORES L.P., *et al*, | } |
| | } |
| Defendants. | } |

## OPINION & ORDER

Despite the efforts of the Court and the parties, and the relatively uncomplicated nature of the facts, this case, brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C §§. 1001 et seq., is a procedural mess. The case was originally brought by Joe Garcia ("Garcia") against his employer Best Buy Stores, L.P, and the Occupational Benefits Plan for the Texas Employees of Best Buy Stores, L.P., (referred to collectively as "Best Buy") and against ESIS, Inc., the benefit plan's administrator, for denial of coverage under the benefit plan.

On May 12, 2008 the parties, recognizing that they would not be entitled to a jury trial, and not wanting to engage in a bench trial, jointly asked the Court to establish a schedule to allow them to "present the merits of this claim on written submission." Doc. 24 at 2. The parties agreed that "the facts to be considered by the Court are generally confined to those developed during the administrative review of the beneficiary's claim." *Id*. The parties even agreed that there was some confusion about what documents would be included in the administrative record, and they agreed to agree to the contents of that record by a specific date, June 12, 2008. *Id*.

The parties agreed that by July 1, 2008, they would each submit "their opening brief, to be limited to forty (40) pages excluding exhibits, double spaced." *Id*.

Responses to the briefs submitted were agreed to be due on July 21, 2008. These responses would "address issues raised in the Parties' opening brief, to be limited to twenty (20) pages, excluding exhibits, double spaced. *Id.*

Finally, the parties agreed to set a "Bench Trial (if necessary)" for August 1, 2008. *Id*. The parties also agreed that they believed a Bench Trial would be unnecessary, and the scheduled date merely "would accommodate brief oral argument by the parties to assist the Court, if desired by the Court, to hear argument on the issues submitted by summary judgment or other dispositive motion. *Id*., at 2-3 The parties also expressed their sentiment that "This modified Scheduling Order will, however, permit the orderly presentation of this matter to the Court upon resolution of any remaining issues on the adequacy of the administrative recorded [sic] required for the Court's consideration. If only that had been possible.

Eventually the deadline for the initial briefs was re-set for July 3, 2008. Defendants filed their briefs on that day (Docs. 34 and 35). Plaintiff, however, did not file a brief that day, but on July 4, 2008, filed his Motion for Summary Judgment (Doc 36). His "trial brief," which contained essentially the same arguments as his motion for summary judgment, was filed on July 7, 2008. (Doc. 38). On July 21, 2008 Plaintiff filed his response to Best Buy's opening brief. On the same day he dismissed ESIS, Inc. as a defendant (Doc. 40, 42). On July 23, 2008 Best Buy filed its response to Plaintiff's opening brief (43).

The Court, in the vain hope of bringing clarity to the case informally asked the parties to agree to deadlines on the filing of motions for summary judgment. On February 5, 2009 the parties responded with an Agreed Notice of Motion for Summary Judgment Deadlines

(Doc 44). In that document the parties agreed on a schedule for the Plaintiff to file an amended Motion for Summary Judgment as well as deadlines for responses and replies. On February 9, 2009 the Court issued an Order to carry out this agreed schedule, in which the Court declared moot, all dispositive motions and pleadings filed before the Order.

Plaintiff filed a Supplemental Motion for Summary Judgment on February 24, 2009. In this Motion he "resubmits his previously filed motion together with its exhibits and authority, and by way of supplementation, submits this supplement to his Motion for Summary Judgment." Best Buy responded on March 16, 2009 (Doc 47), and Plaintiff replied to the response on March 24, 2009 (48)

## I. Background & Relevant Facts.

Garcia alleges that when his employer Best Buy denied him medical and disability benefits under an employer-funded plan this rejection constituted an abuse of discretion under ERISA.

### A. Notice Requirements of Best Buy's ERISA Plan.

The applicable version of Best Buy's employer-funded plan became effective October 1, 2002 and is named the Occupational Benefits Plan for the Texas Employees of Best Buy Co., Inc. ("the Plan"). Doc. 23-2 at 74.[1] The Plan provides disability, death and medical benefits to Texas employees of Best Buy injured at work. *Id*. The Plan is governed by ERISA. 29 USC §§1001 *et seq*. The Plan grants the "Claims Administrator or Committee discretionary and final authority to interpret and implement the provisions of the Plan . . ." .Doc 23-3 at 107. The Claims Administrator at the time of Garcia's injury was a third party, ESIS. 23-5 at 175.

---

[1] The Administrative Record can be found in Document 23, which is filed in five parts, and Document 27.

The Plan sets forth a 24 hour reporting requirement for work-related injuries, stating:

> 4.1 Reporting. The Participant must report every incident or fact that the Participant believes results, or might reasonably be expected to result, in an injury in accordance with the following requirements:
>
> > (a) Notice of Injury: The Participant must provide verbal notice to his or her Manager then on duty immediately after being injured at work, no matter how minor the Injury appears to be. For Injury due to an Accident, verbal notice must be provided within 24 hours of the time of the Injury . . . No benefits will be payable under the Plan if notice is not provided as required above, unless the Claims Administrator determines that good cause exists for failure to give notice in a timely manner.

Doc. 23-3 at 101-102 (Article 1, Section 4.1 of the Plan).

The Plan further defines "Injury," stating:

> 1.24(a) Date of Injury . . . For all purposes of the Plan, the date of Injury shall be either (i) the date of the Accident resulting in the Injury, or (ii) the date that the damage or harm, or symptoms thereof, were first known to (or should have been known to) the Participant or diagnosed by an Approved Physician as Cumulative Trauma.

Doc. 23-3 at 85.

**B.     Garcia's Reporting of His Injury.**

Garcia was store manager of a Best Buy store in Houston, Texas. Doc. 23 at 11. His responsibilities included managing the store, overseeing personnel, controlling inventory, as well as human resource issues such as hiring personnel and overseeing store merchandising. *Id*. Garcia's job duties entailed numerous physical activities, including lifting and moving appliances, such as washers, dryers, televisions sets, stereo equipment and other Best Buy inventory. *Id*.

On or about July 16, 2004, Garcia used a two-wheeler to load a dishwasher for a store-to-store delivery. Doc. 23 at 11. According to Garcia's affidavit,

> While loading the dishwasher, I felt a pull in my back but did not initially feel pain. I was very consumed with my responsibilities as a store manager and did not recognize that I had been injured, so I continued working. Over the next two weeks, my pain increased . . . . By August 2nd, I was concerned because my back pain and related problems had not gone away but had increased. I telephoned [Human Resources] and . . . filled out an incident report on August 4, 2004."

*Id.*

Although Garcia stated on his incident report that he dated his injury as of July 16, 2004, he qualified this by stating: "it is very difficult for me to pinpoint the time of my injury exactly because I was continuously exerting myself as a store manager from July 16th and for the next two weeks. By repeatedly performing my job duties, which included . . . lifting merchandise . . . [I] aggravated my back problems." Doc. 23-5 at 168.

Garcia stated on his employee incident report, which he filled out on August 4, 2004, that he reported the incident on August 3, 2004. *Id.* Garcia's filling out the incident report initiated a response from Best Buy's plan administrator, ESIS. *Id.* at 175. ESIS conducted a recorded phone conversation with Garcia on September 1, 2004. *Id.* at 176-200. The ESIS representative asked Garcia to date the injury and Garcia responded he was not sure "'cause it's been hurting for a while and um I thought it was just ah I guess ah pulled muscle." *Id.* at 182. Garcia did many store deliveries and remembered he had done one on July 16, 2004, which is why he had picked that date in his incident report. *Id.*

**C.     Garcia's Treatment.**

Garcia suffered from a herniated disc. Doc. 23 at 28. He sought medical treatment for the first time on August 2, 2004 from Dr. Isabel Martinez, who prescribed him pain medication. *Id.* at 13-20. Garcia also sought treatment from Dr. Hassan Chahadeh, who gave Garcia epidural injections on September 1, and 8, 2004. *Id.* at 21-30. Lastly, Garcia sought help

from a chiropractor, Todd Bear ("Bear") on September 23, 2004. *Id*. at 31-67. Garcia indicated to Bear that he injured himself on July 26, 2004, lifting a dryer. *Id*. at 33.

**D.     ESIS' Denial of Benefits.**

On September 14, 2004, ESIS sent Garcia an "Adverse Benefits Determination" letter. Doc. 23-5 at 163-66. In this letter, ESIS informed Garcia that it was denying his request for disability and medical benefits because he had "failed to notify [your] manager of [your] occupational injury within 24 hours of the incident," as required by Article 1, Section 4.1 of the Plan. *Id*. Specifically, Garcia had dated his injury as of July 16, 2004, but only "made a report" of it on August 18, 2004, "when you told John Reyes, DHRM that you were having persistent pain in your low back area." *Id*.

Garcia had the right to appeal his adverse benefit determination to the Occupational Benefits Steering Committee ("Steering Committee") of the Plan. Doc. 23-5 at 165. Garcia presented his appeal to the Steering Committee. Docs. 23 and 27. Garcia raised three arguments on appeal: 1) that the Plan language as to when to report was ambiguous and should be construed in his favor; 2) Department of Labor regulations prohibited such a brief notice requirement; and 3) a claim for disability benefits could not be precluded by notice requirements without a demonstration of actual prejudice by Best Buy. Doc 23 at 1-7. On May 25, 2005, the Steering Committee denied his appeal to reinstate his medical and disability benefits under the Plan. Doc. 27 at 23-24. In a two-page letter, the Steering Committee gave as its reason the same reporting requirement of Article 1, Section 4.1 of the Plan, as well as Garcia's affidavit dating his injury as of July 16, 2004, and filling out an incident report as of August 4, 2004. *Id*. The Steering Committee denial did not address any of Garcia's three legal arguments on appeal. *Id*.

## II.     Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).  The substantive law governing the suit identifies the essential elements of the claims at issue and, therefore, indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).   To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and

admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at1075). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988). The non-moving party may also identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167,

178 (5th Cir. 1990). In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

**III.** **Discussion**

**A.** **Abuse of Discretion Standard Under ERISA**

Where a benefit plan grants the plan administrator discretion to construe the plan's terms or make eligibility determinations, courts apply an abuse of discretion standard of review and analyze whether the plan administrator acted arbitrarily or capriciously. *Gosselink v. American Tel. & Tel. Inc.*, 272 F.3d 722, 726 (5th Cir. 2001). The Fifth Circuit employs a two-part test, articulated in *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637-38 (5th Cir. 1992), when analyzing a plan administrator's interpretation of a benefit plan.[2] *Rigby v. Bayer Corp.*, 933 F. Supp. 628, 632 n.2 (E.D.Tex. 1996) (citations omitted). However, when a case does not turn on "sophisticated plan interpretation issues," this test does not apply. *Id.* "The only standard in reviewing a factual determination is abuse of discretion." *Id.*

Judicial review of an administrator's decision is "limited to determining whether there is substantial evidence in the record to support [the administrator's] decision that in-patient ca[r]e was medically unnecessary or whether its refusal to pay the submitted claims was

---

[2] Under the two-pronged, six-part *Wildbur* test, the Court must first determine the legally correct interpretation of the plan. *Gosselink*, 272 F.3d at 726 (citing *Wildbur*, 974 F.2d at 637-38). To make this determination, the court must consider: (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan. *Id.* (citing *Wildbur*, 974 F.2d at 637-38).

If the court determines that the plan administrator's interpretation of the plan is legally incorrect, then the court must decide whether the plan administrator's decision was an abuse of discretion. *Gosselink*, 272 F.3d at 726. These three factors are important in the Court's analysis: (1) the internal consistency of the plan under the administrator's interpretation; (2) any relevant regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of bad faith. *Id.* (citing *Wildbur*, 974 F.2d at 638).

arbitrary." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996) (citing *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1306 (5th Cir.1994)). "A decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 1996) (quoting *Bellaire Gen. Hosp.*, 97 F.3d at 828). The administrator's denial of benefits must be "based on evidence, even if disputable, that clearly supports the basis for its denial." *Lain*, 279 F.3d at 342 (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d at 287, 299 (5th Cir. 1999)).

"The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits." *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004) (citing *Meditrust Fin. Servs. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Deters v. Secretary of Health Educ. And Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

**B.     Conflict of Interest.**

Garcia argues that Best Buy has a conflict of interest because any payment of benefits under the Plan would come directly from Best Buy's own assets, and, therefore, he is entitled to more deferential review by this Court. To support this argument, Garcia looks to the Supreme Court's recent decision in *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008). The Court in *Glenn* reaffirmed the principle that such conflicts of interest should be one of many factors a reviewing court should take into consideration. *Id*. at 2350. A conflict of interest is not eliminated just because the employer has selected a third party to act as administrator of the

ERISA plan. *Id*. at 2349-50. Conflict of interest is 'thrown into the mix,' and may grow in importance in conjunction with other factors such as procedural unreasonableness, or be reduced, sometimes to a vanishing point, by other factors, such as walling off evaluators from those concerned with firm finances. *Id*. at 2351. The deferential standard of review, derived from trust law, as adopted in *Firestone Tire & Rubber Co.v. Bruch*, 489 U.S. 101, 115 (1989), continues to be applied to the discretionary decision making of a conflicted plan administrator, but also requires the reviewing judge to take into account the conflict when determining whether the plan administrator has either substantive or procedurally abused his discretion. *Id*. at 2350. *Glenn* does not create "special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." *Id*. at 2351. Rather, *Glenn* takes *Firestone* at its word, i.e. "[T]he word 'factor' implies. . .that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one." *Id*. *Glenn* points out that a "conflict of interest at issue. . . should prove more important . . .where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id*.

**C.    Abuse of Discretion**.

In reviewing Best Buy's denial of benefits for abuse of discretion the Court is mindful of the Fifth Circuit's holding in *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003), "Our review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness--even if on the low end." Under the Plan, Garcia had to report his injury within 24 hours of when he became aware or should have become aware of the harm resulting from the

injury, no matter how minor the injury. Garcia contends that he reported his injury on time because he only became aware of the 'harm' as of August 2, 2004, they day before he orally reported the injury to Best Buy. Best Buy did not find this claim credible because Garcia's own affidavit dates the injury as of July 16, 2004. Furthermore both in his affidavit and in his recorded phone conversation with ESIS, Garcia described being in increasing pain since July 16, 2004. The Plan employed broad comprehensive language in setting forth a strict 24 hour reporting requirement. Best Buy's denial was within the continuum of reasonableness, *MacLachlan*, 350 F.3d at 478, because it took account of Garcia's own statements that his injury and the symptoms he felt as a result of that injury began two weeks prior to his reporting the incident. Furthermore, following the Supreme Court's guidance in *Glenn*, the Court does not find that Best Buy's conflict of interest would alter the outcome of this review.

Garcia also argues that he should have enjoyed a more lax reporting requirement that applied under the Plan to "cumulative trauma" as opposed to injury resulting from accident. The only support of for this is Garcia's own assertion in his affidavit that repeated physical tasks he undertook as part of his job as store manager led to cumulative trauma. This is directly contradicted, however, by his own incident report dating his injury to a specific incident. Furthermore, to qualify for the more lax reporting requirement under the Plan, Garcia would have had to provide a medical diagnosis establishing cumulative trauma, which he failed to do. Doc. 23-3 at 101. Garcia did not present any substantial evidence of cumulative trauma either to Best Buy in his claim or on appeal. Thus, his argument as to cumulative trauma fails.

**D.** **Breach of Fiduciary Duty and Failure to Provide a Full and Fair Review**

Garcia asks the Court to overturn Best Buy's denial of benefits based upon his argument that the Occupational Benefits Steering Committee (Steering Committee), which heard

the appeal from the Plan's denial of benefits, breached its fiduciary duty and failed to provide a full and fair review (pursuant to 29 U.S.C. § 1133), when it considered only the notice issue and failed to address the three issues Garcia raised on appeal. Doc 46 at 3. In the Supplement to Motion for Summary Judgment Plaintiff argues that the Steering Committee "must consider all pertinent information reasonably available to it including conflicting facts or opinions. It must demonstrate that it has considered all of the evidence from both sides and explain why it has chosen its particular position in denying the claim." *Id.* For this statement Plaintiff relies upon two opinions from the Southern District of New York: *Cejaj v. Building Service 32B-J Health Fund*, 2004 WL 414834 *8 (S.D.N.Y and *Connell v. The Guardian Life Ins. Co. of America Severance Plan*, 2003 WL 21459563 *3 (S.D.N.Y.) Neither of these opinions presented the circumstances of the instant case. *Cejaj* was concerned with conflicting evidence of medical conditions, not with legal and interpretive arguments raised for the first time on appeal. *Connell* was decided on a motion to dismiss the lawsuit brought after appellate severance committee failed to respond to the plaintiff's request that his denial of benefits be reviewed.[3] In the case under consideration, the Steering Committee did not fail to explain the basis of its decision; it simply did not address the ancillary issues raised by the Plaintiff for the first time on appeal.

The Court will address in turn each of the issues presented by Plaintiff to the Steering Committee in his appeal.

### 1. Report of Injury Was Timely

In the April 13, 2005 appeal to the Steering Committee from the denial of his claim, Plaintiff first argued that he had reported his injury within 24 hours of realizing he had sustained harm to his body. He argues that he reported his injury to Best Buy's District Human Resources

---

[3] Plaintiff also cites *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833-834 (2003), but the support it lends to Plaintiff's argument is *di minimus* at best.

manager, John Reyes on August 2, 2004, and "although [he] experienced a pull in his back on July 16, 2004, he did not realize he had sustained a 'harm' as that term is used in Article I, Sec. 1.24 of the Plan. . . ." Doc 23, at 2.  With further quotes from his affidavit and the Plan, Plaintiff argues to the Steering Committee that his notice was timely because he should be allowed to report his injury within 24 hours of realizing that he had sustained harm to his body.  If his interpretation of the Plan's notice requirement is not accepted by the Steering Committee, then, he argues the language is ambiguous, that is, susceptible to more than one reasonable interpretation, and the rule of *contra proferentum* governs. [4]

The Fifth Circuit held in *Wegner v. Standard Insurance Company*, 129 F.3d 814, 818 (5th Cir. 1997), "In construing ERISA plan provisions, we interpret the contract language 'in an ordinary and popular sense as would a person of average intelligence and experience,' such that the language is given its generally accepted meaning if there is one."  *Quoting Todd v. AIG Insur. Co*., 47 F3d 1448, 1451 n.1 (internal quotation omitted).  "Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured." *Wegner*, 129 F3d at 818.  Plaintiff argues that Article I, Sec. 1.24(a) of the Plan, in its provision, "Date of Injury," states that it may be (ii) the date the damage or harm, or symptoms thereof, were first known to (or should have been known to) the Participant. . . ." Doc. 23 at 3.  The actual language of the Plan does not use the word "may," but states, "For all purposes of this Plan, the date of Injury shall be either (i) the date of the Accident resulting in the Injury, or (ii) the date that the damage or harm, or symptoms thereof, were first known to (or should have been known to) the Participant or diagnosed by an Approved Physician as Cumulative Trauma." Doc.

---

[4] "[A]mbiguities n contracts are to be resolved against the drafter."  Rhorer v. Rayethon Engineers and Constructors, Inc., 181 F.3d 634, 640 (5th Cir. 1999)

23-2 at 85. Plaintiff's argument in his appeal that the use of the disjunctive in the provision gives rise to an ambiguity, fails. There is no ambiguity in the provision. Both the Plan Administrator, in applying the 24 hour notice requirement to Plaintiff's claim, and the Steering Committee's affirmance of that application were correct interpretations of the Plan.

### 2. The 24 Hour Requirement Violates Department of Labor Regulations

Plaintiff's appeal next argued that the Plan's requirement that the participant notify a supervisor of "any injury no matter how slight" within 24 hours violates Department of Labor Regulation § 2650.503-1(a)(3) "because it unduly inhibits or hampers the initiation or processing of claims for benefits." Doc. 23 at 4. The Plan's language is

> 4.1 Reporting. The Participant must report every incident or fact that the Participant believes results, or might reasonably be expected to result, in an injury in accordance with the following requirements:
> (a) Notice of Injury: The participant must provide verbal notice to his or her Manager then on duty immediately after being injured at work, no matter how minor the Injury appears to be. For Injury due to an Accident, verbal notice must be provided within 24 hours of the time of the Injury.

Doc 23-3 at 101.

The language of the Regulation relied upon cites examples such as the payment of a fee to process a claim, denying a claim for failing to acquire prior approval where prior approval was impossible, or a situation where the claimant was unconscious and in need of immediate medical attention. These are much more serious inhibitions to the initiation or processing of claims for benefits than the 24 hour notice rule. Moreover, the Plan anticipates situations in which the 24 hour notice rule could impose such serious inhibitions to the initiation or processing of claims. The Plan provides that "No benefits will be payable under the Plan if notice is not provided as required above, unless the Claims Administrator determines that good cause exists for failure to give notice in a timely manner." *Id*. Plaintiff cites no law, nor has the

Court found any, that would warrant a holding that the Plan's 24 hour notice rule violates Department of Labor Regulations.

### 3. The Notice Prejudice Rule.

Plaintiff argued in his appeal to the Steering Committee that the 24 hour notice rule should not be applied to his case because such application violates the Notice Prejudice Rule, which should be applied to his claim for benefits.  The Notice Prejudice Rule provides that a claim may not be denied due to late notice unless there is a showing of actual prejudice caused by the late reporting.  The questions raised before the Court are 1) whether the Notice Prejudice Rule applies to the Plan under the savings clause of ERISA relating to insurance, and, if not, 2) whether the Notice Prejudice Rule applies as a matter of federal common law.  The questions presented are pure questions of law as they do not involve any review of factual determinations by Best Buy as Plan Administrator.  Questions of law in ERISA cases are reviewed under a *de novo* standard by the district court.  See, e.g., *Sunbeam-Oster Co. Group Benefits Plan for Salaried & Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1373 (5th Cir. 1996) (Question whether ERISA plan language was ambiguous was pure question of law entitled to *de novo* review).

Texas has adopted the Notice Prejudice Rule in the context of insurance claims.  In *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636-637 (Tex. 2008), the Supreme Court of Texas stated, "[w]e hold that an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay."  The prejudice requirement is consistent with the general principle "that an immaterial breach does not deprive the insurer of the benefit of the bargain and thus cannot relieve the insurer of the contractual coverage obligation." *Id*.

The United States Supreme Court has held that a Notice Prejudice Rule regulating insurance in California was not pre-empted by ERISA because it fell under the savings clause. *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 373 (U.S. 1999). The saving clause, § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A) exempts from preemption "any law of any State which regulates insurance." Using a 'common sense test,' the Court in *Ward* found that the Notice Prejudice Rule regulated insurance and, thus, would toll notice of an ERISA claim where the administrator of the plan failed to demonstrate actual prejudice. *Ward*, 526 U.S. at 373. Texas's Notice Prejudice Rule is not substantially different from California's in *Ward*. Like California's, it can be said to regulate insurance because a) it is "an integral part of the policy relationship between the insurer and the insured," and b) the rule is "aimed at" the insurance industry. *Ward*, 526 U.S. at 374-375 (Where these two factors "securely satisfied," notice prejudice rule "regulates insurance."). Thus, Texas' Notice Prejudice Rule also "regulates insurance" under the savings clause, § 514(b)(2)(A), and is applicable to ERISA-regulated plans. *Ward*, 526 U.S. at 373; *See also*, *Dang v. Unum Life Ins. Co. of Am.*, 175 F.3d 1186, 1192 (10th Cir. Okla. 1999)(Holding that Oklahoma state law notice prejudice rule was not pre-empted by ERISA as it fell within savings clause.)

There is, however, an important limitation. As the Court noted in *Ward*, 526 U.S. at 367, application of the savings clause does not extend to self-insured ERISA plans because they are not deemed to involve insurance *qua* insurance. *See also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747 (U.S. 1985) (Distinction leaves self-insured plans preempted whereas insurance-funded ERISA plans are open to indirect regulation.) Thus, the Notice Prejudice Rule will not be applicable by virtue of state law to ERISA plans that are self-insured. It is undisputed that Best Buy's plan is self-insured. Best Buy "currently pays the entire

cost to provide . . . coverage under this Plan and pays Plan benefits solely out of the general assets of the Company." Doc. 23 at 138. Although the Plan can be altered to be funded by insurance, Doc. 23 at 138, as it is not so currently so funded, any state law that regulated insurance would not be applied to the Plan because it is self-funded plan.

Plaintiff urges here that, as a matter of federal common law the Notice Prejudice Rule should be applied to all ERISA plans. The Court declines to be innovative in this case and will not create a federal common law to apply the Notice Prejudice Rule to self-funded ERISA plans.

The Occupational Benefits Plan for the Texas Employees of Best Buy Stores, L.P., in denying Plaintiff's Claims did not abuse its discretion in finding from the undisputed evidence in the case that Plaintiff Joe Garcia "failed to notify [his] manager of [his] occupational injury within 24 hours of the incident." Doc 23-5 at 164.

The Occupational Benefits Steering Committee, to which Plaintiff appealed the Plan's decision, gave Joe Garcia a full and fair review of the decision denying the claim. It did not breach its fiduciary duty in not addressing the three issues raised on appeal. Plaintiff did not challenge the accuracy or reliability of the evidence the Plan relied upon to deny Plaintiff benefits. The Committee did not abuse its discretion in affirming that denial. Accordingly, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment (Docs. 36 and 46) is hereby DENIED. It is further

ORDERED that before September 24, 2009 the parties shall present to the Court any reason why a final judgment should NOT be entered in this case.

SIGNED at Houston, Texas, this 10th day of September, 2009.

                                                  MELINDA HARMON
                                      UNITED STATES DISTRICT JUDGE